FARMER, Judge.
The record in this case reveals that the state faded to disclose police reports and a deposition concerning an incident other than the crime being prosecuted. This other incident bore a striking similarity to the events surrounding the crime in trial, and thus provided evidence that defendant’s claim of mistaken identity had merit. Even more strikingly, the prosecution actually instructed certain witnesses to testify in a misleading or inaccurate way that further withheld exculpatory evidence from the jury. The combination of these prosecutorial acts requires that we reverse defendant’s conviction and remand for a new trial.
Eyewitness Carroll testified for the State about the events on the night in question. Carroll testified that the events occurred after an evening of drinking beer. He said that on the night in question a hysterical white woman came screaming to defendant’s apartment. Defendant jumped to her aid, tucking a .41 magnum into the back of his pants and quickly leaving. A gunshot was heard 15 minutes later. Carroll testified that 15-45 minutes after the shot he heard the chain link fence behind the apartment rattle, and the door slam. Defendant emerged from his bathroom wearing only his underwear; and Carroll immediately queried, “You shot at a cop didn’t you?” Carroll stated that defendant replied only that he was getting the white woman’s “stuff’ back when suddenly a cop ran up and the gun accidently went off as he fled from the scene.[1]
Details of his account conflict with the events described by the other eyewitness Plovka, who is a known crack smoker and heavy drinker. Plovka’s testimony contained distinct differences from Carroll’s as to several important details of the state’s scenario. These included the time of defendant’s exit and return to the apartment; what day it was; whether he had a gun with him; the location of the drug buy gone awry; where he said he was going when he left the apartment; what time he arrived back at the apartment; and why defendant was leaving the state of Florida.
These discrepancies are important because the events described by Carroll and Plovka are strikingly similar to Officer Tribble’s description of the events on February 21st, the day after the shooting at the officers. Officer Tribble prepared a police report concerning the events of February 21st, and gave a deposition to an assistant public defender who represented defendant on the misdemeanor charge associated with the events of February 21st. The State Attorney’s office had a copy of this deposition in their files, but defendant did not.
*383 On February 21st, defendant was seen near his apartment, running with a gun in the back of his pants. He climbed over a chain link fence on that day, after a confrontation with two other black males over a white female. These events mirror the events described by Carroll, except for Carroll’s insinuation that defendant had shot at a cop. Carroll stated that defendant said he did not shoot at the officer, the gun went off as he was running, and that he was at the scene only to try to make things right with the guy who took “stuff” from the white female. Carroll and Plovka both testified to hearing only one shot.
Defendant’s physical features are inconsistent with eyewitness testimony as to the gunman in this case, who was described by one officer as being 5'10"-5'11" (shorter than the 6-foot testifying officer), approximately 160-165 pounds and in his mid 20’s. The Defendant is 35 years old, 6'2" or 6'3", and weighs approximately 200 pounds. The gunman was reported by the officer to have worn a black hat, dark pants, and a light gray or blue button-down, long sleeved shirt which flapped behind him as he ran from the officers. An eyewitness to defendant’s apparel the night he left his apartment with a gun tucked into his pants said he wore gray corduroy baggy pants, high top sneakers, and a dark blue sweatshirt with “Miami” written across it.
The descriptions of the weapon vary as well. The officer describes only seeing the flash from the muzzle of a gun, but not hearing the cannon-like sound reported to be made by a .41 magnum, defendant’s gun. Carroll described defendant’s gun as having a brown wooden handle in his statement to the police. Carroll would not make a positive identification that the gun shown to him in court was the gun shown to him by the defendant. The gun actually recovered from defendant’s brother-in-law in New Jersey had rubber grips.
The defense advised the trial court that Officer Tribble’s name was given to them on August 3, 1994. The State Attorney’s office admits that they did not give the defense the published police reports that were in their possession, nor did they give the defense the deposition of Officer Tribble detailing the events of February 21st. Moreover, the State Attorney instructed Officer Tribble to testify only to the fact that he had made contact with the Defendant on February 21st, thereby withholding the details of that incident from both the defense and the jury. At trial, Officer Tribble’s testimony covered 2 pages, stating (as he was told) only that he had contact with defendant on February 21st.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that:
“suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
373 U.S. at 87, 83 S.Ct. at 1196-97. Brady was later modified by the Court in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), where it abandoned any distinction between the “specific requests”, on the one hand, and “general or no requests”, on the other. The Court held that prosecutorial disclosure is required when there is a reasonable probability that the result of the trial would have been different if the evidence had been disclosed to the defense. 473 U.S. at 682, 105 S.Ct. at 3383.
Just last year in Kyles v. Whitley, - — U.S. -, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Court further elucidated Bagley by holding that:
1. favorable evidence is material, and a constitutional violation occurs from the failure to disclose it to the defense, when there is a reasonable probability that disclosure of the undisclosed evidence to the defense would have resulted in an acquittal;
2. materiality under Bagley is not a sufficiency of the evidence inquiry — favorable evidence is material when it reasonably could be taken to put the whole case in a different light so as to undermine confidence in the conviction;
3. there is no harmless error analysis if a Brady-Bagley violation is shown because *384 a higher burden is placed on the prosecution by Brady-Bagley;
4. the state’s disclosure obligation turns on the cumulative effect of all the evidence, not on isolated pieces of evidence;
5. the prosecutor alone bears the responsibility for gauging the likely effect of all favorable evidence and make disclosure when the point of “reasonable probability” is reached, even if the police have failed to make the favorable evidence known to the prosecutor.
— U.S. at-, 115 S.Ct. at 1568. In Kyles the Court reversed a conviction upon a conclusion that:
A. some of the undisclosed favorable evidence would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense, and would also have reduced or destroyed the value of the state’s two best witnesses;
B. other undisclosed evidence would have raised opportunities for the defense to attack the thoroughness and good faith of the police investigation and would also have allowed the defense to question the probative value of certain physical evidence used by the prosecution;
C. still other undisclosed evidence would have permitted the defense to impeach the state’s arguments on a key issue of guilt;
D. even though significant aspects of the state’s evidence would have been unaffected by the undisclosed evidence and the jury might have believed the unaffected evidence and rejected the undisclosed evidence, the unaffected evidence would hardly have amounted to overwhelming proof of guilt and confidence that the verdict would have been the same did not survive a recap of the undisclosed evidence.
— U.S. at-, 115 S.Ct. at 1569-1576. The Court summed up its conclusion thus:
“Confidence that the verdict would have been unaffected cannot survive when suppressed evidence would have entitled a jury to find that the eyewitnesses were not consistent in describing the killer, that two out of four eyewitnesses testifying were unreliable, that the most damning physical evidence was subject to suspicion, that the investigation that produced it was insufficiently probing, and that the principal police witness was insufficiently informed or candid.”
— U.S. at-, 115 S.Ct. at 1575.
As the Court said in Kyles:
“Unless, indeed, the adversary system of prosecution is to descend to a gladiatorial level unmitigated by any prosecutorial obligation for the sake of truth, the government simply cannot avoid responsibility for knowing when the suppression of evidence has come to portend such an effect on a trial’s outcome as to destroy confidence in its result.”
- U.S. -, -, 115 S.Ct. 1555, 1568. The Court emphasized that the prosecution alone knows what is undisclosed; therefore the prosecution must be given the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of “reasonable probability” is reached.
— U.S. at-, 115 S.Ct. at 1567. The record in this case tells us that there is a “reasonable probability” that a jury could logically have concluded that the alcohol and substance-affected eyewitnesses Carroll and Plovka confused the date and time of defendant leaving his apartment and getting into an altercation with two men over a woman. Officer Tribble’s police report and deposition, combined with the discrepancies in witness testimony as to physical appearance, clothing, gun make and model, number of gunshots heard — all not disclosed by the prosecution — deprived defendant of the opportunity to raise a reasonable doubt as to mistaken identity in the minds of the jurors. This nondisclosure raises in our minds a lack of confidence in the jury’s result.
REVERSED FOR NEW TRIAL.
PARIENTE and STEVENSON, JJ., concur.

. This is Carroll’s description of the events, not the defendant's admitting that he shot at a known police officer.